In the Matter of Everette SHULUND, Alleged Bankrupt.

In the Matter of Lois K. SHULUND, Alleged Bankrupt.

Nos. 5068, 5069.

United States District Court
D. Montana.

Nov. 8, 1962.

Smith, Paul & Emmons, Great Falls, Mont., for bankrupts.

Weber, Bosch & Kuhr, Havre, Mont., for petitioning creditor.

JAMESON, District Judge.

Citizens Bank of Montana, the petitioning creditor in this involuntary proceeding, has moved the court in each case for an order requiring the production, inspection and copying of substantially all of the business records of the alleged bankrupts, Everette Shulund and Lois K. Shulund, and three corporations controlled by the Shulunds.

The petitions charge the alleged bankrupts with suffering or permitting, while insolvent, creditors to obtain liens upon their respective property, through legal proceedings, which were not vacated or discharged within 30 days. See Section 3, sub. a(3), National Bankruptcy Act, as amended, 11 U.S.C.A. § 21, sub. a(3). The alleged bankrupts have denied the allegations of the petition and have demanded trial by jury on the issue of insolvency and with respect to the alleged acts of bankruptcy.

Petitioner seeks production under Rule 34, F.R.Civ.P.[1] The motions are made in the alternative for an examination of the alleged bankrupts pursuant to Section 21, sub. a of the Bankruptcy Act, 11 U.S.C.A. § 44, sub. a,[2] in the event

---

1. Rule 34, F.R.C.P., provides in pertinent part:

"Upon motion of any party showing good cause therefor and upon notice to all other parties, and subject to the provisions of Rule 30(b), the court in which an action is pending may (1) order any party to produce and permit the inspection and copying or photographing, by or on behalf of the moving party, of any designated documents, papers, books, accounts, letters, photographs, objects, or tangible things, not privileged, which constitute or contain evidence relating to any of the matters within the scope of the examination permitted by Rule 26(b) and which are in his possession, custody, or control; * * *".

2. Section 21, sub. a of the Bankruptcy Act, 11 U.S.C.A. § 44, provides:

"(a) The court may, upon application of any officer, bankrupt, or creditor, by order require any designated persons, in-

that the court should determine that Rule 34 is inapplicable.

■■ Insofar as section 21, sub. a is concerned, its function is one of discovery for the purpose of affording creditors and administrative officers an opportunity to locate and protect the assets of the bankrupt's estate.[3] While an examination under section 21, sub. a may be ordered by the court prior to an adjudication in bankruptcy (Cameron v. United States, 1941, 231 U.S. 710, 34 S.Ct. 244, 58 L.Ed. 448), the matter is left to the sound discretion of the court,[4] and "it has been said that where the purpose of the examination is to prove insolvency of the bankrupt or gain evidence to support an involuntary petition, the examination will not be allowed; and where the bankrupt has filed an answer denying insolvency, the bankruptcy court may, in its discretion, suspend the examination until the issue of solvency can be determined". 2 Collier on Bankruptcy, 14th ed., 278, 279, § 21.08.

In Rawlins v. Hall-Epps Clothing Co., 5 Cir., 1914, 217 F. 884, the facts were quite similar to those of the instant case. The court, in holding the examination unavailable, said: "The purpose of the examination is to develop the whereabouts of assets of the estate for the purpose of aiding its administration, and not to enable the petitioning creditors to elucidate evidence to assist them in establishing the insolvency of the bankrupt or the act or acts of bankruptcy relied upon by them."

In re State Realty Co. of Boston, D.Mass.1955, 137 F.Supp. 69, substantial-ly restates the rule of the Rawlins case. After recognizing that an order for examination under section 21, sub. a, prior to adjudication, is discretionary, the court said: "Moreover, such examination should not be allowed for the purpose of enabling petitioning creditors to obtain evidence for use in the hearing on adjudication but only on a showing that it is for the purpose of aiding in the administration of the estate." 137 F.Supp. at 70.[5]

■ The motions are very broad and necessarily would include evidence which could be used to prove the insolvency or solvency of the alleged bankrupts. At the hearing, counsel for petitioning creditors frankly stated the information was sought for the purpose of proving insolvency as well as to locate assets. That the examination should not be permitted in such case is settled by the authorities discussed, and the court, in the exercise of its discretion, should deny the motion under section 21, sub. a.

The alleged bankrupts contend that Section 3, sub. d of the Bankruptcy Act, 11 U.S.C.A. § 21, sub. d, prescribes the exclusive procedure for examination of a bankrupt and inspection of his records with respect to the issue of insolvency. That section presently provides:

"Whenever a person against whom a petition has been filed alleging the commission of the * * * third * * * act of bankruptcy takes issue with and denies the allegation of his insolvency or his inability to pay his debts as they mature, he shall appear in court on the hearing,

---

cluding the bankrupt and his or her spouse, to appear before the court or before the judge of any State court, to be examined concerning the acts, conduct, or property of a bankrupt: *Provided*, That the spouse may be examined only touching business transacted by such spouse or to which such spouse is a party and to determine the fact whether such spouse has transacted or been a party to any business of the bankrupt: *And provided further*, That the spouse may be so examined, any law of the United States or of any State to the contrary notwithstanding."

**3.** In re Eastern Utilities Investing Corporation, 3 Cir., 1938, 98 F.2d 620, 622, 623; and see R. J. Reynolds Tobacco Co. v. A. B. Jones Co., 8 Cir., 1931, 54 F.2d 329, 335; Collier Bankruptcy Manual 2d ed., 278, § 21.05.

**4.** 2 Collier on Bankruptcy 14th ed., 308, § 21.19.

**5.** See also R. J. Reynolds Tobacco Co. v. A. B. Jones Co., supra; Abbott v. Wauchula Mfg. & Timber Co., 5 Cir., 1916, 29 F. 677, 681; In re Eastern Utilities Investing Corporation, supra.

and prior thereto if ordered by the court, with his books, papers, and accounts, and submit to an examination and give testimony as to all matters tending to establish solvency or insolvency or ability or inability to pay his debts as they mature and, in case of his failure so to do, the burden of proving solvency or ability to pay his debts as they mature shall rest upon him."

Does Section 3, sub. d of the Bankruptcy Act preclude discovery under Rule 34, F.R.C.P.? Subdivision d was updated and amended by the Chandler Act in 1938.[6] Prior thereto it was well established that section 3, sub. d provided the exclusive procedure in situations of this nature, and that discovery beyond the express language therein was not available. See In re Johnson and Moffat, S.D.Fla.1926, 15 F.2d 728; In re Thompson, W.D.Pa.1910, 179 F. 874.

The Chandler Act also added subdivision k to Section 21 of the Act, 11 U.S.C.A. § 44, which provides:

"(k) In all proceedings under this title, the parties in interest shall be entitled to all rights and remedies granted by the Rules of Civil Procedure for the United States District Courts established from time to time by the Supreme Court pertaining to discovery, interrogatories, inspection and production of documents, and to the admission of execution and genuineness of instruments: * * *."

One of the stated purposes of the comprehensive revision of the Bankruptcy Act in 1938 was *"to improve the procedural sections of the Act* in the safeguarding of real estate titles, in the examination of hostile witnesses, *in proceedings for discovery;* and in the practice on appeals". (Emphasis added.)[7] The legislative history indicates a relationship between the addition of section 21, sub. k and the amendment to section

3, sub. d. The following language appears in House Report No. 1409 to H.R. 8046, 75th Cong., 1st Sess. (1937), p. 21:

"Section 21k: This new subdivision accords with the proposed amendments to section 3d and with the present equity practice. It tends to reduce all expenses, speed trials, and the ready production of admitted facts, so as to save the time of the court, counsel, and litigants, particularly in jury trials of contested involuntary proceedings where often a large amount of time is unnecessarily consumed in arriving at what are the actual facts as to admitted assets and liabilities."

Section 3, sub. d was amended to reach all of the acts of bankruptcy where insolvency or inability to pay debts as they mature is a material issue; and, in addition, the alleged bankrupt's duty to appear in court on the hearing with his books and records was more broadly stated by the new subdivision as follows: "he shall appear in court on the hearing, *and prior thereto if ordered by the court,* with his books, papers, and accounts * * *" (New language italicized.) The following language appears in the legislative history relative to that portion of the section 3, sub. d amendment:

"In all cases where the question of insolvency is involved, the courts should have the discretion to require to be filed in advance of the trial, either by a jury or by the court, a verified list in detail showing the debtor's admitted assets and liabilities *and to make provisions for the inspection of the books, accounts, and papers of the alleged bankrupt by the petitioning creditors in advance of the trial,* as in equity rule No. LVIII. This would greatly shorten the length of the trial, especially before a jury, and avoid the present system where, in a com-

6. Act of June 22, 1938, 52 Stat. 840.

7. Hearing before House Judiciary Committee, 75th Cong. 1st Sess., on H.R. 6439, subsequently amended, reintroduced and reported as H.R. 8046, p. 4.

plicated case, testimony must necessarily be taken at the trial upon many immaterial matters before the real facts can be ascertained as to the details of the debtor's financial condition. Creditors usually do not and cannot be expected to have a full and comprehensive knowledge of the bankrupt's affairs. The effect would be that at the trial the court or jury, upon the question of insolvency, would have immediately before it all admitted assets and liabilities, leaving only to be determined the question of values." (Emphasis added.) House Report No. 1409, supra, p. 7.

The inference is inescapable that Congress intended to broaden the procedure with respect to hearings on the issue of insolvency and make the discovery provisions of the Federal Rules of Civil Procedure applicable. The new provisions seem designed to change the results of earlier cases, such as In re Johnson and Moffat and In re Thompson, supra.

It may be argued that this approach allows creditors to do indirectly what cannot be done directly under section 21, sub. a. However, the two proceedings are quite distinct. Section 21, sub. a[8] contemplates an oral examination of any person, including the bankrupt and his or her spouse, at any time to inquire into anything relevant to the administration of a bankrupt estate. On the other hand, to allow discovery, within the scope of the rules, would make a section 3, sub. d hearing not unlike any other modern adversary proceeding.

█ If the alleged bankrupt denies insolvency, the burden of proving this issue rests upon the petitioning creditors. 1 Collier on Bankruptcy, supra, 464, § 3.306. By the provisions of section 3, sub. d, especially as augmented by section 21, sub. k, the petitioning creditors are assisted in carrying that burden of proof. See 1 Collier on Bankruptcy, supra, 456, § 3.208.

As noted supra, section 3, sub. d provides that in case of the alleged bankrupt's failure to appear with his books, papers, and accounts and submit to an examination as to all matters tending to establish solvency or insolvency, "the burden of proving solvency * * * shall rest upon him." See 1 Collier on Bankruptcy, supra, 464–465, § 3.306. Thus the section is quite specific in setting forth the consequences for failure to comply with its terms.

█ In view of the express provisions of section 3, sub. d, the sanctions imposed by Rule 37, F.R.C.P. to enforce compliance with discovery procedures are not applicable. The Federal Rules of Civil Procedure must give way when they, or portions thereof, are inconsistent with express provisions of the Bankruptcy Act. General Order 37, of the General Orders in Bankruptcy, 11 U.S. C.A. following section 53, provides that the Rules "shall, *in so far as they are not inconsistent with the Act* or with these general orders, be followed as nearly as may be." (Emphasis added.)

In re Cardinal Service Corporation, S.D.N.Y.1959, 175 F.Supp. 47, illustrates the application of the limitation contained in General Order 37. There the trustee served notice on a claimant's attorney to take the deposition of the claimant upon oral examination before the referee, pursuant to the Federal Rules of Civil Procedure. The claimant, living in North Carolina, refused to attend the hearing in New York. The court held that while there was no question that the trustee had the right to take the claimant's deposition, the sanctions of Rule 37(d) could not be invoked against the claimant, since to do so would be inconsistent with section 41, sub. a of the Bankruptcy Act.[9] The court said: "The Federal Rules of Civil

8. See note 2, supra.

9. Section 41, sub. a, 11 U.S.C.A. § 69, sub. a reads in part: " * * * Provided, That a person other than a bankrupt

* * * shall not be required to attend as a witness before a referee at a place more than one hundred miles from such person's place of residence * * * ".

Procedure were not intended to modify the provisions of the Bankruptcy Act and are applicable only when they are not inconsistent with the Act." See also In re Totem Lodge & Country Club, S.D. N.Y.1955, 134 F.Supp. 158.

 It is my conclusion that (1) Rule 34, F.R.C.P. is applicable in this proceeding; but (2) if the alleged bankrupts refuse to comply with the order to produce, the only consequence would be that the burden of proving solvency would thereby shift to them under the express provision of section 3, sub. d of the Bankruptcy Act. To apply the sanctions of Rule 37(b) would be inconsistent with this provision, and the Bankruptcy Act is controlling.